**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ANA AMELIA TUM CHIC,<br><br>*Plaintiff,*<br><br>v.<br><br>OLD FW, L.L.C., and MONROE STAFFING SERVICES, LLC,<br><br>*Defendants.* | Case No. ______________________<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**May 30, 2023** |

**COMPLAINT AND JURY TRIAL DEMAND**

**INTRODUCTION**

1. This is a complaint brought by Plaintiff Ana Amelia Tum Chic ("Ms. Tum Chic") against Defendants Old FW, L.L.C. ("Old FW")[1] and Monroe Staffing Services, LLC ("Monroe Staffing") (collectively "Defendants"). Ms. Tum Chic was employed by Monroe Staffing and Old FW from June 2020 to July 2021, with a placement at the Old FW distribution center in North Haven, Connecticut. During the course of Ms. Tum Chic's employment with Defendants, she became pregnant. Defendants responded with persistent discrimination, refusing her reasonable accommodations to which she was lawfully entitled. When Ms. Tum Chic eventually miscarried at work, Defendants unlawfully terminated her employment.

2. Within her first year of employment with Defendants, her supervisor at Old FW, Eva Tirado ("Supervisor Tirado"), made clear to Ms. Tum Chic that her employers would not view pregnancy favorably. Supervisor Tirado asked Ms. Tum Chic about her childbearing plans and made a disapproving face when Ms. Tum Chic expressed her desire to have another child. Several months later, Ms. Tum Chic became pregnant and requested light duty accommodations from

[1] Old FW was previously known as Fulfillment Works LLC.

Supervisor Tirado. Supervisor Tirado repeatedly dismissed Ms. Tum Chic's requests for accommodation despite the fact that less strenuous work was available and even after Ms. Tum Chic informed Supervisor Tirado that she was experiencing abdominal pain.

3. Ultimately, Ms. Tum Chic began to miscarry during a shift at Old FW. Ms. Tum Chic's coworker told Supervisor Tirado that Ms. Tum Chic was experiencing a medical emergency, and her supervisor directed another employee to take her home. Ms. Tum Chic went immediately from her home to the emergency department to seek medical attention. The physicians at the emergency department advised Ms. Tum Chic that she would need to take time off from work to heal from the miscarriage. Ms. Tum Chic informed her primary contact, Angel Romero ("Mr. Romero") at Monroe Staffing of her condition; he assured Ms. Tum Chic that he understood her need to recover and indicated that Monroe Staffing would wait to hear from her.

4. Several days later Ms. Tum Chic attempted to return to work at Old FW, but she was turned away and told to call Monroe Staffing. An agent on the phone informed Ms. Tum Chic that there was no more work for her. Ms. Tum Chic then called Mr. Romero, who told her that another person had been hired at Old FW in her place and that he would call her if there was other work for her. Mr. Romero never called Ms. Tum Chic.

5. Ms. Tum Chic brings this action to remedy sex (pregnancy) discrimination, committed by Defendants in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq., the Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen. Stat. § 46a-58 et seq., and the federal Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq. Ms. Tum Chic seeks injunctive and declaratory relief, damages, and other legal and equitable relief pursuant to Title VII, CFEPA, and FMLA.

## PARTIES

6. Ms. Tum Chic is a resident of New Haven, Connecticut. She is female, and at the times relevant to this complaint, was jointly employed by Monroe Staffing and Old FW.

7. Defendant Old FW is an L.L.C. located in Milford, Connecticut. Old FW operates a packing and distribution center in North Haven, Connecticut. Old FW employs 50 or more employees. At all relevant times, Old FW met the relevant definition of "employer" and/or a "covered employer" under all relevant statutes.

8. Defendant Monroe Staffing is a staffing agency located in Milford, Connecticut. Monroe Staffing employs 50 or more employees. At all relevant times, Monroe Staffing met the relevant definition of "employer" and/or a "covered employer" under all relevant statutes.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 2000e-5(f)(3) and 29 U.S.C. § 2617(a)(2); this Court should exercise its supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

10. Venue is proper under 28 U.S.C. § 1391 because the parties reside in this District, and the unlawful practices complained of occurred in this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Ms. Tum Chic has exhausted all administrative remedies.

12. On December 6, 2021, Ms. Tum Chic filed a timely charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") regarding Defendants' conduct during her pregnancy and miscarriage, alleging that Defendants engaged in unlawful sex (pregnancy) discrimination and retaliation. This charge was cross-filed with the Connecticut Commission on Human Rights and Opportunities ("CHRO").

13. On March 22, 2023, Ms. Tum Chic received her Release of Jurisdiction letters from the CHRO, attached hereto as Exhibit 1.

14. On May 11, 2023, Ms. Tum Chic received her Notice of Right to Sue letters from the EEOC, attached hereto as Exhibit 2.

## FACTUAL ALLEGATIONS

### Ms. Tum Chic's Employment with Defendants

15. Ms. Tum Chic worked at Old FW, a distribution center in North Haven, Connecticut, and Monroe Staffing from June 2020 to July 2021. Ms. Tum Chic typically worked a full, forty-hour workweek, Monday through Friday. On occasion, Ms. Tum Chic would work overtime on Saturdays.

16. At Old FW, Ms. Tum Chic packed products such as lotions and creams, and her work frequently entailed lifting heavy boxes.

17. Ms. Tum Chic never received any poor performance reviews or complaints about the quality of her work.

18. Even before her pregnancy, her employers made clear to Ms. Tum Chic that pregnancy would not be viewed favorably.

19. On one occasion, Ms. Tum Chic's supervisor, Supervisor Tirado, asked whether Ms. Tum Chic desired to have another child.

20. When Ms. Tum Chic responded generally in the affirmative, Supervisor Tirado indicated clear distaste by responding "really?" derisively and then walking away.

### Defendants Discriminatorily Failed to Provide Ms. Tum Chic with Reasonable Accommodations for Her Pregnancy

21. In mid-June 2021, Ms. Tum Chic learned that she was pregnant. She was overjoyed to be welcoming a new member of her family.

22. Soon after, on or about July 5, Ms. Tum Chic informed Supervisor Tirado that she was pregnant.

23. As her pregnancy progressed, Ms. Tum Chic required accommodations in order to perform her work safely. Old FW failed to provide Ms. Tum Chic with the reasonable accommodations to which she was legally entitled.

24. Ms. Tum Chic requested reasonable accommodations on two occasions: first, on or about July 18, and again on or about July 20. Both of her requests were summarily denied.

25. When Ms. Tum Chic first requested light duty accommodations from Supervisor Tirado, on or about July 18, Supervisor Tirado dismissed her request immediately and provided no accommodations to Ms. Tum Chic.

26. Rather than assigning Ms. Tum Chic to lighter duty assignments, which Ms. Tum Chic knew to be available, Supervisor Tirado told Ms. Tum Chic "no, you're fine," and required her to continue lifting heavy boxes alone.

27. Although heavier assignments often required two people to complete, Supervisor Tirado made Ms. Tum Chic do these assignments by herself. She was often unable to carry such boxes alone and needed to request assistance from other employees in the vicinity who were working under other supervisors.

28. These co-workers noticed that Ms. Tum Chic had been assigned particularly difficult work and asked why she had not been given a partner to help her carry heavy boxes, as was standard. Ms. Tum Chic could not provide an answer except that she had been assigned to do it alone.

29. Some of Ms. Tum Chic's co-workers who knew that she was pregnant remarked to her that she should not be lifting heavy things.

30. Ms. Tum Chic's secondary supervisor, Keli [Last Name Unknown], informed Ms. Tum Chic that Supervisor Tirado had disclosed Ms. Tum Chic's pregnancy to her. Like Ms. Tum Chic's co-workers, Keli cautioned Ms. Tum Chic not to lift heavy objects. Keli told Ms. Tum Chic that she wanted to help her but that "[Keli] did not want to be fired from [her] job."

31. On or about July 20, while she was lifting heavy boxes at work, Ms. Tum Chic began experiencing severe abdominal pain and a sensation that something was "dropping" from her uterus. Ms. Tum Chic again attempted to assert her rights by informing Supervisor Tirado of her pain. She again requested reasonable light duty accommodations so that she could either be moved to less strenuous tasks or be allowed to go home because she was in pain.

32. Supervisor Tirado denied Ms. Tum Chic's second request for reasonable accommodations and, instead, told her to continue working.

**Ms. Tum Chic's Miscarriage at Work**

33. On July 21, one day after Ms. Tum Chic reported severe pain at work and was denied a reasonable accommodation, Ms. Tum Chic was again working a routine shift packing boxes when she began experiencing extreme lower-abdominal pain and the sensation of something very hot coming out of her vagina.

34. Ms. Tum Chic ran to the bathroom at or around 3:00 PM. Ms. Tum Chic realized she was experiencing significant bleeding and beginning to miscarry. Ms. Tum Chic screamed.

35. One of Ms. Tum Chic's coworkers, Glory [last name unknown], heard Ms. Tum Chic's screams and came to the bathroom. Glory then notified Supervisor Tirado of Ms. Tum Chic's medical emergency.

36. When the seriousness of Ms. Tum Chic's medical emergency was clear, Supervisor Tirado instructed Glory to take Ms. Tum Chic home but did not call for medical attention.

37. Glory drove Ms. Tum Chic from Old FW in North Haven to Ms. Tum Chic's residence in New Haven.

38. Due to the seriousness of her condition, once Ms. Tum Chic got home, she went immediately to the emergency department.

39. The physicians in the emergency department at Yale New Haven Hospital discussed with Ms. Tum Chic the medical implications of miscarriage and the potential need to take time off work for her emotional and physical recovery.

40. After her conversations with the emergency department physicians, Ms. Tum Chic called Mr. Romero, her primary contact at Monroe Staffing, to notify him of her miscarriage and inform him that she would need time to recover.

41. Mr. Romero expressed his understanding and told Ms. Tum Chic that Monroe Staffing would wait to hear from her.

42. Ms. Tum Chic did not express any intent to resign from her position at either Monroe Staffing or Old FW at any point during this conversation, nor at any other time.

**Defendants Discriminatorily Terminated Ms. Tum Chic's Employment**

43. On Monday, August 2, Ms. Tum Chic attempted to return to her assignment at Old FW with her medical documentation from her treating physicians at the emergency room, which explained her absence.

44. Ms. Tum Chic was still in intense pain and experiencing significant bleeding at this time. Indeed, the following day (August 3), she was diagnosed with and treated for an incomplete miscarriage.

45. Ms. Tum Chic was eager to return to work and spoke with Supervisor Tirado, who told her that Human Resources wanted to speak with her and asked that she wait in the kitchen. Ms. Tum Chic waited for thirty minutes.

46. Finally, Keli approached Ms. Tum Chic and gave her a phone number for Monroe Staffing. She told Ms. Tum Chic "here's the number for you to call. I'm afraid for you there's no more work." Keli said that she was sorry but she "didn't have a choice."

47. In tears, Ms. Tum Chic called the number provided and explained to an agent at Monroe Staffing that she had been out sick and was now returning to work.

48. The agent informed Ms. Tum Chic that there was no more work for her.

49. Ms. Tum Chic then called Mr. Romero at Monroe Staffing and asked him what had happened, reiterating that she wanted to come back to work.

50. Mr. Romero informed Ms. Tum Chic that another person had been hired to replace her, and that, if there was other work, he would call her.

51. Mr. Romero never called Ms. Tum Chic at any point after making this statement.

## FIRST CAUSE OF ACTION

### Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e(k) Disparate Treatment Because of Sex (Pregnancy)

***Failure to Accommodate Pregnancy* (Against Defendant Old FW)**

52. Ms. Tum Chic realleges and incorporates by reference all preceding paragraphs as alleged above as if fully set forth herein.

53. Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a), provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."

54. Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(k), provides that "'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical condition; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work."

55. At all times relevant to this Complaint, Ms. Tum Chic was a member of a protected class because she is a woman and she was pregnant.

56. Ms. Tum Chic requested reasonable accommodations for her pregnancy on several occasions. Each time, Defendant Old FW immediately denied her request for lighter duty assignments and did not accommodate her. On some occasions, Ms. Tum Chic was made to do even more difficult work (lifting heavier items) than was required of other employees.

57. Defendant Old FW discriminated against Ms. Tum Chic based on her sex, and because of her pregnancy, in violation of Title VII of the Civil Rights Act of 1964 as amended by the Pregnancy Discrimination Act by refusing to reasonably accommodate her pregnancy on the same terms as it accommodates other, non-pregnant workers who are similar in their ability or inability to work.

58. Defendant Old FW's refusal to accommodate Ms. Tum Chic's pregnancy imposed a significant burden on her. Ultimately, Ms. Tum Chic miscarried at work.

59. Defendant Old FW engaged in this unlawful sex discrimination with reckless indifference to Ms. Tum Chic's legally protected rights.

60. As a result of Defendant Old FW's unlawful sex discrimination, Ms. Tum Chic suffered significant monetary loss, including loss of earnings and other benefits.

61. As a result of Defendant Old FW's unlawful sex discrimination, Ms. Tum Chic suffered and continues to suffer harms including emotional pain, suffering, and other nonpecuniary losses.

**SECOND CAUSE OF ACTION**

**CFEPA, Conn. Gen. Stat. § 46a-60(b)(7)(G)**
**Failure to Accommodate Pregnancy (Against Defendant Old FW)**

62. Ms. Tum Chic realleges and incorporates by reference all preceding paragraphs as alleged above as if fully set forth herein.

63. The Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen. Stat. § 46a-60(b)(7)(G), provides that it is a discriminatory practice for an employer "to fail or refuse to make a reasonable accommodation for an employee or person seeking employment due to her pregnancy, unless the employer can demonstrate that such accommodation would impose an undue hardship on such employer."

64. Under CFEPA, Conn. Gen. Stat. § 46a-60(a)(2), a reasonable accommodation "means, but is not limited to, being permitted to sit while working, more frequent or longer breaks, periodic rest, assistance with manual labor, job restructuring, light duty assignments, modified work schedules, temporary transfers to less strenuous or hazardous work . . . ."

65. At all times relevant to this Complaint, Ms. Tum Chic was a member of a protected class because she was pregnant.

66. Ms. Tum Chic requested reasonable accommodations, including light duty and less strenuous work assignments, for her pregnancy on several occasions. Each time, Old FW denied her requests, and did not accommodate her. On some occasions, Ms. Tum Chic was made to do even more difficult work (lifting heavier items) than what was required of other employees.

67. Defendant Old FW discriminated against Ms. Tum Chic based on her pregnancy in violation of CFEPA by refusing to reasonably accommodate her pregnancy on the same terms as it accommodates other, non-pregnant workers who are similar in their ability or inability to work.

68. Defendant Old FW's refusal to accommodate Ms. Tum Chic's pregnancy imposed a significant burden on her. Ultimately, Ms. Tum Chic miscarried at work.

69. Defendant Old FW engaged in this unlawful pregnancy discrimination with either malice or reckless indifference to Ms. Tum Chic's legally protected rights.

70. As a result of Defendant Old FW's unlawful pregnancy discrimination, Ms. Tum Chic suffered significant monetary loss, including loss of earnings and other benefits.

71. As a result of Defendant Old FW's unlawful pregnancy discrimination, Ms. Tum Chic suffered and continues to suffer harms including emotional pain, suffering, and other nonpecuniary losses.

## THIRD CAUSE OF ACTION

**Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e-2(m), 2000e(k)**
**Disparate Treatment Because of Sex (Pregnancy)**

***Unlawful Termination on the Basis of Sex (Pregnancy)*** **(Against All Defendants)**

72. Ms. Tum Chic realleges and incorporates by reference all preceding paragraphs as alleged above as if fully set forth herein.

73. Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a), provides that it is unlawful for an employer "to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."

74. Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(k), provides that "'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical condition."

75. At all times relevant to this Complaint, Ms. Tum Chic was a member of a protected class because she is a woman and she was pregnant.

76. Defendants knew that Ms. Tum Chic was pregnant and that she suffered a miscarriage.

77. Defendants discriminated against Ms. Tum Chic based on her sex, and because of her pregnancy and related medical conditions, in violation of Title VII of the Civil Rights Act of 1964 as amended by the Pregnancy Discrimination Act by terminating her employment for becoming pregnant and/or experiencing a miscarriage.

78. Defendants discriminated against Ms. Tum Chic based on her sex, and because of her pregnancy, by terminating her employment while she recovered from the medical emergency of her miscarriage and hiring a new employee to take her place.

79. Defendants' purported reasons for terminating Ms. Tum Chic's employment are a pretext for sex discrimination.

80. Defendants further violated 42 U.S.C. § 2000e-2(m) because Ms. Tum Chic's sex and/or her pregnancy were motivating factors in Defendants' decision to terminate Ms. Tum Chic's employment.

81. Defendants engaged in this unlawful sex discrimination with reckless indifference to Ms. Tum Chic's legally protected rights.

82. As a result of Defendants' unlawful sex discrimination, Ms. Tum Chic suffered significant monetary loss, including loss of earnings and other benefits.

83. As a result of Defendants' unlawful sex discrimination, Ms. Tum Chic suffered and continues to suffer harms including emotional pain, suffering, and other nonpecuniary losses.

**FOURTH CAUSE OF ACTION**

**CFEPA, Conn. Gen. Stat. §§ 46a-60(b)(1), 46a-60(b)(7)(A)**
**Disparate Treatment Because of Sex (Pregnancy)**

***Unlawful Termination on the Basis of Sex (Pregnancy)*** **(Against All Defendants)**

84. Ms. Tum Chic realleges and incorporates by reference all preceding paragraphs as alleged above as if fully set forth herein.

85. CFEPA, Conn. Gen. Stat. § 46a-60(b)(1) provides that it is a discriminatory practice for an employer to "discharge from employment any individual or to discriminate against any individual … in terms, conditions or privileges of employment because of the individual's . . . sex . . . ."

86. CFEPA, Conn. Gen. Stat. § 46a-60(b)(7)(A) also provides that it is a discriminatory practice for an employer "[t]o terminate a woman's employment because of her pregnancy."

87. At all times relevant to this Complaint, Ms. Tum Chic was a member of a protected class because she is a woman and she was pregnant.

88. Defendants knew that Ms. Tum Chic was pregnant and that she suffered a miscarriage.

89. Defendants discriminated against Ms. Tum Chic based on her sex, and because of her pregnancy and related medical conditions, in violation of CFEPA, by terminating her employment for becoming pregnant and/or experiencing a miscarriage.

90. Defendants discriminated against Ms. Tum Chic based on her sex, and because of her pregnancy, by terminating her employment while she recovered from the medical emergency of her miscarriage and hiring a new employee to take her place.

91. Defendants' purported reasons for terminating Ms. Tum Chic's employment are a pretext for sex and pregnancy discrimination.

92. Defendants engaged in this unlawful pregnancy and sex discrimination with reckless indifference to Ms. Tum Chic's legally protected rights.

93. As a result of Defendants' unlawful pregnancy and sex discrimination, Ms. Tum Chic suffered significant monetary loss, including loss of earnings and other benefits.

94. As a result of Defendants' unlawful pregnancy and sex discrimination, Ms. Tum Chic suffered and continues to suffer harms including emotional pain, suffering, and other nonpecuniary losses.

## FIFTH CAUSE OF ACTION

### Title VII, 42 U.S.C. § 2000e-3(a)
### Retaliation (Against All Defendants)

95. Ms. Tum Chic realleges and incorporates by reference all preceding paragraphs as alleged above as if fully set forth herein.

96. Defendants retaliated against Ms. Tum Chic, in violation of Title VII of the Civil Rights Act of 1964 because she engaged in protected activity, including but not limited to requesting reasonable accommodations for her pregnancy.

97. Defendants' adverse actions would be likely to dissuade a reasonable employee from requesting pregnancy accommodations to which they are lawfully entitled.

98. As a result of Defendants' unlawful retaliation, Ms. Tum Chic suffered significant monetary loss, including loss of earnings and other benefits.

99. As a result of Defendants' unlawful retaliation, Ms. Tum Chic suffered and continues to suffer harms including emotional pain, suffering, and other nonpecuniary losses.

## SIXTH CAUSE OF ACTION

### CFEPA, Conn. Gen. Stat. §§ 46a-60(b)(4), 46a-60(b)(7)(K) Retaliation (Against All Defendants)

100. Ms. Tum Chic realleges and incorporates by reference all preceding paragraphs as alleged above as if fully set forth herein.

101. CFEPA, Conn. Gen. Stat. § 46a-60(b)(4) provides that it is a discriminatory practice to "for any . . . employer . . . to discharge, expel or otherwise discriminate against any person because such person has opposed any discriminatory employment practice . . . ."

102. CFEPA, Conn. Gen. Stat. § 46a-60(b)(7)(K) provides that it is a discriminatory practice for an employer "to retaliate against an employee in the terms, conditions or privileges of her employment based upon such employee's request for a reasonable accommodation."

103. Defendants retaliated against Ms. Tum Chic for asserting her rights under CFEPA, including requesting a reasonable accommodation.

104. As a result of Defendants' unlawful retaliation, Ms. Tum Chic suffered significant monetary loss, including loss of earnings and other benefits.

105. As a result of Defendants' unlawful retaliation, Ms. Tum Chic suffered and continues to suffer harms including emotional pain, suffering, and other nonpecuniary losses.

## SEVENTH CAUSE OF ACTION

### CFEPA, Conn. Gen. Stat. § 46a-60(b)(9) Unlawful Request for Information Relating to Child-Bearing Plans (Against Defendant Old FW)

106. Ms. Tum Chic realleges and incorporates by reference all preceding paragraphs as alleged above as if fully set forth herein.

107. Conn. Gen. Stat. § 46a-60(b)(9) provides that it is a violation of state anti-discrimination law for an employer to ask an employee about their child-bearing age or plans for

pregnancy unless the request is a bona fide occupational need related to occupational exposure to substances that may cause birth defects or constitute a hazard to an employee's reproductive system or fetus.

108. The nature of Ms. Tum Chic's employment did not constitute exposure to substances that may cause harm to her or a fetus.

109. Defendant Old FW nevertheless inquired about Ms. Tum Chic's child-bearing plans.

110. Defendant Old FW therefore violated Conn. Gen. Stat. § 46a-60(b)(9) by inquiring about her child-bearing plans that were not related to any potential hazard to Ms. Tum Chic or her fetus.

111. As a result of Defendant Old FW's unlawful violation of the statute, Ms. Tum Chic revealed her child-bearing plans to Defendant Old FW, which subsequently resulted in further discriminatory actions.

**EIGHTH CAUSE OF ACTION**

**Family and Medical Leave Act, 5 U.S.C. § 6381 et seq.**
**FMLA Interference (Against all Defendants)**

112. Ms. Tum Chic realleges and incorporates by reference all preceding paragraphs as alleged above as if fully set forth herein.

113. The Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601-2652 ("FMLA"), provides eligible employees the right to take unpaid leave for certain family and medical reasons for up to twelve weeks, including "serious health condition[s] that make[] the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 26126(a)(1)(D).

114. The FMLA includes physical conditions that involve inpatient care in a hospital or continuing treatment by a healthcare provider as a serious health condition. 29 U.S.C. § 2611(11).

115. The FMLA applies to private employers with fifty or more employees. 29 U.S.C. § 2611(4)(A)(i).

116. To qualify for FMLA leave, an employee must have worked for the employer for at least twelve months amounting to at least 1,250 hours. 29 U.S.C. § 2611(2)(A)(ii).

117. Employers may not "interfere with, restrain, or deny the exercise of or the attempts to exercise, any right provided under" the FMLA. 29 U.S.C. § 2615(a)(1).

118. Under the FMLA, employees may make a request for leave as soon as practicable in the event of an unforeseen circumstance. 29 U.S.C. § 825.303(a).

119. Defendant Monroe Staffing Services employs more than fifty people.

120. Defendant Old FW employs more than fifty people.

121. Defendants were covered employers under FMLA given the sizes of their workforces.

122. Ms. Tum Chic was an eligible employee under FMLA given the duration of her employment with Defendants before invoking her entitlements under the FMLA.

123. Ms. Tum Chic was entitled to leave under FMLA because her miscarriage constituted a serious health condition that made her unable to perform the functions of her position.

124. Ms. Tum Chic gave Defendants proper notice of her intention to take leave as soon as practicable under the facts and circumstances of her miscarriage.

125. Defendants interfered with Ms. Tum Chic's rights under FMLA by denying her medical leave following her miscarriage.

## NINTH CAUSE OF ACTION

**Family and Medical Leave Act, 5 U.S.C. § 6381 et seq.**
**FMLA Retaliation (Against All Defendants)**

126. Ms. Tum Chic realleges and incorporates by reference all preceding paragraphs as alleged above as if fully set forth herein.

127. Employers may not retaliate against employees for exercising their rights under the FMLA. 29 U.S.C. § 2615(a)(1).

128. Employers must restore the employee to the same or equivalent position upon their return from leave. 29 U.S.C. § 2614(a).

129. Defendants took an adverse employment action against Ms. Tum Chic by terminating her after she availed herself of her protected rights under FMLA.

130. Defendants terminated Ms. Tum Chic because of her protected activity under the FMLA, specifically, notifying her employers that she intended to take medical leave.

131. Ms. Tum Chic was adversely affected by Defendants' employment decision.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Tum Chic respectfully requests this Court enter judgment in her favor and against Defendants, and grant her all relief as allowed by law and equity, including but not limited to the following:

A. Declaratory relief, including but not limited to a declaration that Defendants violated Title VII, CFEPA, and the FMLA;

B. Permanent injunctive relief against Defendants enjoining them from continuing to discriminate against pregnant employees including by refusing reasonable accommodations, and ordering Defendants to adopt and implement policies with

respect to accommodating pregnancy, childbirth, and related conditions that comply with Title VII and CFEPA;

C. A monetary award of compensation for loss of income and benefits;

D. A monetary award of compensatory damages, including for emotional distress, and any restitution, penalties, liquidated damages, exemplary damages, and punitive damages that may be owed;

E. Pre-judgment and post-judgment interest at the highest lawful rate;

F. Costs incurred, including reasonable attorney's fees to the extent allowable by law; and

G. Such other relief as the Court deems just and proper.

## JURY DEMAND

Ms. Tum Chic demands a jury trial on the matters alleged herein.

Dated: May 30, 2023

Respectfully submitted,

s/ James Bhandary-Alexander
James Bhandary-Alexander (ct28135)
Emily Rock (ct29766)
Cat Gassiot, Law Student Intern*
María Mendoza, Law Student Intern*
Melisa Olgun, Law Student Intern*
Solomon Center for Health Law and Policy
Yale Law School
127 Wall St.
New Haven, CT 06511

james.bhandary-alexander@yale.edu
emily.rock@yale.edu
(203) 215-5345

*Counsel for Plaintiff*

* *Motions for Law Student Appearances forthcoming*